Ziyong (Sean) Li (WA 44366)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
sli@beneschlaw.com

Attorney for Plaintiff
Godox Photo Equipment Co., Ltd.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GODOX PHOTO EQUIPMENT CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> PROFOTO AKTIEBOLAG, <br><br> Defendant. | Case No. 2:25-cv-502 <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Godox Photo Equipment Co. Ltd. ("Godox" or "Plaintiff"), for its Complaint against Profoto Aktiebolag ("Profoto" or "Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the United States Patent Act, 35 U.S.C. § 1, *et seq*. Godox seeks declaratory judgments that U.S. Patent No. 11,630,375 ("the '375 Patent") (**Exhibit 1**) is not infringed by certain Godox photography and video lighting products.

2. This action further arises under the laws of the state of Washington. Godox seeks an order remedying Defendant's tortious interference with Godox's business expectations.

## BACKGROUND

**A. Godox Is A Recognized Industry Leader In Photographic Equipment And Lighting Technology**

3. Since its establishment in 1993, Godox has evolved into a prominent figure in the photographic equipment industry, specializing in lighting and audio solutions for photographers, videographers, and filmmakers. The company's commitment to innovation is evident through its diverse product lineup, which includes LED video lights, flash speedlites, flash triggers, microphones, and various accessories. This dedication to advancing technology has positioned Godox as a go-to brand for professionals seeking reliable and high-quality equipment.

4. Godox's leadership in the industry is further recognized by the Technical Image Press Association (TIPA), the same organization that has recognized industry leaders such as Canon, Fujifilm, and Sony. In 2023, the Godox KNOWLED Bi-color LED Light MG1200Bi was honored with the "Best Professional LED Light" TIPA award, which highlights its exceptional performance and versatility. This accolade, among others, reflects Godox's continuous efforts to push the boundaries of lighting technology and its significant impact on the global photographic community.

**B. The Patent-In-Suit: U.S. Patent No. 11,630,375 ("the '375 Patent")**

5. Since April 2024, Defendant Profoto has alleged that Godox's products infringe its U.S. Patent No. 11,630,375 ("the '375 Patent"), entitled "Flash Housing for Photographic Purposes, A Set Comprising A Flash Housing for Photographic Purposes and at Least One Flash Light Shaping Tool, and a Flash Light Shaping Tool." The '375 Patent was initially filed as a foreign patent before entering the

United States. The United States Patent and Trademark Office ("USPTO") issued the '375 Patent on April 18, 2023.

6. The '375 Patent covers a relatively simple invention, which involves attaching a flash light shaping tool, such as a diffuser, to a flash using a magnetic mechanism. The originally filed Claim 1 of the application is provided below.

> 1. A flash housing (2) for photographic purposes, said flash housing (2) comprising:
>
> > a flash forming element (1) arranged to generate a flash light,
> >
> > a lens element (3) arranged to let at least part of the generated flash out of the flash housing so as to obtain a flash light, and
> >
> > a fastening element (25) for attachment of a flash light shaping tool (27, 27', 27'', 27''', 27'''', 27'''''), characterized in that the fastening element (25) is configured for attachment of the flash light shaping tool (27, 27', 27'', 27''', 27'''', 27''''') on top of the lens element (3), and the fastening element is arranged at least partly alone border of the lens element for magnetic engagement with a corresponding fastening element (28) at the flash light shaping tool.[1]

7. The above claim may appear cumbersome due to its phrasing and the way it describes the component; however, upon careful reading, it presents a straightforward concept. It involves a "flash forming element," which serves as the light source of a flash, with a lens at the outlet to allow light to pass through. Additionally, a mechanism is provided to attach a flash light shaping tool, such as a diffuser, which can take various shapes to modify the distribution of light. There is also a "fastening element" magnetically attaching the flashlight shaping tool to the flash.

8. Due to the broad nature of the initial claims and the vague language, the examination process included both non-final and final rejections by the Examiner, leading to multiple amendments across different parts of the claims, significantly narrowing their overall scope.

9. Specifically, on August 5, 2022, the USPTO issued a final office action rejecting the application on the grounds of obviousness in light of prior art references, finding that the claims were "unpatentable over Harden (Publication No.: US 2018/0205864 A1 . . .) in view of Lau [Patent No.: US 8,712,234]."

---

[1] The numbers in the claim were initially included to correspond with the numbered components in the patent figures.

10. In response, Profoto introduced additional claim language and argued that the prior art did not disclose the newly added features. The bolded portion of the response below was emphasized by Profoto during prosecution and was added to distinguish the application from prior art.

> Accordingly, Harden and Lau do not disclose at least, "the flash housing fastening element arranged along a border of the lens element and *extending from the plane of an external lens element surface of the lens element*, for magnetic engagement with a corresponding fastening element at the flash light shaping tool, wherein the lens element has a substantially circular cross-section, wherein the flash housing fastening element is ring shaped and is made of ferromagnetic material, and *wherein the flash housing fastening element has a fastening surface facing in the main direction of the flash light let out of the lens element*," as recited in claim 1.

11. Essentially, the amendment requires the fastening element to *extend from* the plane of the lens surface. This explicitly relinquishes any claim where the fastening element does not extend from the lens surface, including cases where it is *flush* with the surface.

12. Under the well-settled principle of prosecution history estoppel, by adding this limitation, Profoto explicitly surrendered the original broader scope of the patent and restricted its claims accordingly. As a result, Profoto is bound by this narrower scope and cannot later attempt to broaden the claims beyond what was explicitly granted.

13. Despite this clear prosecution history, Profoto has been attempting to circumvent the limitations imposed during examination. It is seeking to expand the scope of the claims as though the office actions and subsequent narrowing never occurred. This effort represents an improper attempt to reclaim subject matter that was previously surrendered in order to obtain the patent. Such a strategy directly contradicts the principles of prosecution history estoppel, which prevent a patentee from recapturing what was intentionally given up during the patent prosecution process.

14. The full text of issued Claim 1 follows below (emphasis added).

1. A flash housing for photographic purposes, said flash housing comprising:

    a flash forming element arranged to generate a flash light,

    a lens element arranged to let at least part of the generated flash out of the flash housing so as to obtain a flash light, the lens element having a substantially circular cross-section, and

a flash housing fastening element for attachment of a flash light shaping tool, the flash housing fastening element configured for attachment of the flash light shaping tool on top of the lens element, *the flash housing fastening element arranged along a border of the lens element and extending from the plane of an external lens element surface of the lens element*, for magnetic engagement with a corresponding fastening element at the flash light shaping tool, wherein the lens element has a substantially circular cross-section, wherein the flash housing fastening element is ring shaped and is made of ferromagnetic material, and wherein the flash housing fastening element has a fastening surface facing in the main direction of the flash light let out of the lens element.

**C. Profoto Misuses Its Patent in Amazon's APEX Proceeding**

15. Amazon.com serves as a critical distribution channel for Godox products. Godox's products have received highly positive reviews and enjoy substantial popularity on Amazon. And they have become the target of Defendant's abusive conduct.

16. In December 2024, Defendant asked Amazon.com, Inc., a nonparty, to start an Amazon Patent Evaluation Express ("APEX") proceeding, alleging that certain Godox's products infringed the '375 Patent. APEXs is a fast-track extrajudicial patent dispute resolution process run by a single evaluator selected by Amazon, who is paid a fixed fee of $4,000. The APEX process is brief, lasting only a few weeks. It allows no discovery and limits evidence and defenses. As a law review article noted, the program "has drawn criticism for disproportionately one-sided outcomes[,] leading to its use as a retaliatory tool."[2] (**Exhibit 2**) "The patent holder wins a disproportionate amount in APEX proceedings, creating incentives to initiate the process without valid claims." *Id*.

17. In pursuing this proceeding, Profoto has asserted an overly broad interpretation of the patent claims, including subject matters that had previously been disclaimed during the prosecution.

18. Unfortunately, in line with APEX's reputation for disproportionately favoring patent owners, the ruling went against Godox. This happened despite the accused products failing to meet key limitations of the '375 Patent that were added during prosecution. That includes, but not limited to, the requirement for "the flash housing fastening element arranged along a border of the lens element and extending from the plane of an external lens element surface of the lens element."

---

[2] Nicholas Lipperd, "Is Amazon's APEX the Top Option for Patent Rights?", WASH. J. OF LAW, TECH. & ARTS (Jan. 31, 2023), https://wjlta.com/2023/01/31/is-amazons-apex-the-top-option-for-patent-rights/ (last visited March 20, 2025).

19.     Profoto's actions did not cease. In March 2025, Profoto again asserted the '375 Patent against additional Godox products and sought to initiate another APEX proceeding. Once more, Profoto asserted claims beyond the scope permitted by the USPTO during the examination.

20.     Even more egregiously, Profoto exploited the '375 Patent by reporting to Amazon and accusing one of Godox's products (shown on the left below) that is clearly different from the claimed design (shown on the right below).

 

21.     Notably, not only does this Godox product (AD200Pro, ASIN: B0DGX81JB8) lack any magnetic fastening components, but the edge of the flash outlet is also rectangular in shape, whereas the patent claim explicitly requires that "the lens element has a substantially *circular cross-section*" '375 Patent, Claim 1 (emphasis added).

22.     This limitation was added during the patent prosecution process. Yet, Profoto again disregarded prosecution estoppel and improperly attempted to extend its patent claims to cover a rectangular-shaped design.

23.     The fact that Profoto accuses this product clearly demonstrates that it failed to conduct a good-faith investigation into the existence of the claimed shape and magnetic engagement mechanism. If this matter were before the District Court, such a failure would constitute a clear violation of Federal Rule of Civil Procedure 11.

24.     Again, Amazon, a forum that tends to favor patent owners, removed the product on March 18, 2025, *before* Godox had the opportunity to respond.

//

//

25.  The removal of Godox's products from Amazon has caused substantial harm to its business. Accordingly, Godox now brings this action seeking a declaratory judgment that its products do not infringe the '375 Patent.

**D.  Godox's Products Do Not Infringe the '375 Patent**

26.  Throughout Profoto's abusive assertions, the following Godox products have been removed from Amazon.com or accused of infringement in at least one APEX proceeding or cease-and-desist letter: AD100Pro, AK-R1, H200R, V1, V1Pro, V1ProU, V1U, V100, V100U, R1 and AD200Pro ("Products-at-Issue"). Additionally, Profoto sent letters to Godox's offline distributors, leading to the removal of some of these products. These Products-at-Issue do not infringe the '375 Patent.

27.  Due to Profoto's improper and overly broad interpretation of the asserted claims, various products with distinct features have been accused of infringement. These Products-at-Issue can be categorized into six groups.

*Group 1*

28.  The products in this group include AD100Pro, V1, V1Pro and V100. An exemplary figure illustrating their features is shown below.



29.  When disassembled, these products consist of four main components: a housing, a lens, a diffuser, and a steel ring, as shown below.



30. However, this structure differs from the claimed structure because the steel ring does not "*extend[] from* the plane of an external *lens element surface* of the lens element" as recited by the claims. Instead, there is an additional component between the lens element and the steel ring—a diffuser. As illustrated below, the lens element and the diffuser are separate and distinct components.



31.     Indeed, the '375 Patent classifies the diffuser as an example of a "flash light shaping tool" rather than as a "lens element." *See* '375 Patent, 7:46-47 ("the ***flash light shaping element*** is a dome shaped ***diffuser element***"), *see also id.*, claim 17 ("The ***flash light shaping tool*** according to claim 15, wherein the screen is arranged to ***diffuse*** at least a part of the flash light.") (emphasis added).

32.     The cross-sectional diagram below demonstrates how these components are assembled.



33.     Essentially, the lens element is positioned first, with the diffuser placed immediately above it. The ring is then positioned on the diffuser. This configuration differs from the patented design, which requires the ring to "extend[] from the plane of an external lens element surface of the lens element." In this case, the ring does not extend from the lens element surface but rather sits on the diffuser.

34.     Furthermore, the surface of the ring is ***flush with*** the diffuser, rather than "***extending*** from the plane of an external . . . surface." As a result, it does not meet the claim requirements.

//

//

*Group 2*

35. The product in this group includes H200R. An exemplary figure illustrating its features is shown below.



36. As demonstrated above, this product does not include a lens element, but solely a diffuser. This serves as an additional reason why the product does not infringe the '375 Patent, as it does not contain the "lens element" recited in the '375 Patent claims.

*Group 3*

37. The product in this group includes R1. An exemplary figure illustrating its features is shown below.

//

//

//

//



38.     As demonstrated above, this product does not include a lens element, but solely a diffuser. Furthermore, the surface of the ring is ***flush with*** the diffuser, rather than "***extending*** from the plane of an external . . . surface." As a result, it does not meet the claim requirements.

<u>Group 4</u>

39.     The products in this group include V1ProU, V1U and V100U. An exemplary figure illustrating their features is shown below.

//

//

//

//



40.    As demonstrated above, these products do not include a "magnetic engagement" or the corresponding "ferromagnetic material" as required by the '375 Patent. Instead, the red ring is made of plastic. This serves as a further basis for the products' non-infringement of the '375 Patent.

*Group 5*

41.    The product in this group includes AD200Pro. An exemplary figure illustrating its features is shown below.



42. As discussed above, this product has a rectangular shape and lacks any magnetic engagement. Therefore, it does not fall within the scope of the '375 Patent, which requires a "substantially circular cross-section," "magnetic engagement," and "ferromagnetic material."

*Group 6*

43. The products in this group include AK-R1. An exemplary figure illustrating their features is shown below.



44. As shown above, these products are diffusers and flash light shaping tools that lack the majority of the claim requirements, such as the "flash forming element," the "lens element", and the "flash housing fastening element," because the claims are directed to a flash. Even in the case of indirect infringement, these diffusers cannot compensate for the missing elements in the accused flash products. Therefore, these products do not infringe the '375 Patent.

**THE PARTIES**

45. Plaintiff Godox Photo Equipment Co. Ltd. is a company organized and existing under the laws of China, with its principal place of business located at 1st To 4th Floor, Building 2/1st To 4th Floor,

Building 4 Yaochuan Industrial Zone, Tangwei Community, Fuhai Street, Baoan District, Shenzhen, Guangdong, China. Godox sells its products through Amazon.com and offline distributors.

46. Upon information and belief, Defendant Profoto Aktiebolag is a Swedish company, with its principal place of business at Landsvägen 57, SE-172 65, Sundbyberg, Sweden.

47. Profoto alleges that it is the assignee and owner of the '375 Patent.

## STANDING, JURISDICTION, AND VENUE

48. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, the United States Patent Act, 35 U.S.C. § 1, *et seq.*, and the laws of the state of Washington. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a) because an actual case or controversy currently exists between Plaintiff and Defendant regarding the subject matter of this action, and the Court would have subject matter jurisdiction over this action if Defendant initiated suit for patent infringement. This court has subject matter over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because they are so related to the declaratory judgment claims that they form part of the same case or controversy.

49. Further, Godox has standing under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, because a substantial controversy exists between Godox and Defendant, which have adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment. Based on Defendant's conduct—including (i) sending cease-and-desist letters accusing Godox of infringing the '375 Patent, and (ii) prosecuting APEX proceedings in which it argued that Godox's products infringed and should be removed from Amazon.com—Godox has a real apprehension that it will face suit or other adverse action from Defendant regarding the '375 Patent.

50. Indeed, via the APEX proceeding, Godox already has been forced to address Defendant's infringement accusations in an alternative dispute resolution and has suffered both pecuniary and nonmonetary injuries as a result.

51. In addition, Defendant sent cease and desist letters on February 28, 2024, April 12, 2024, July 30, 2024, September 17, 2024, March 4, 2025, to Godox and/or its distributors, alleging infringement of the '375 Patent related to at least one of the Products-at-Issue.

52. Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the Products-at-Issue do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '375 Patent. Godox is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the '375 Patent and an injunction requiring Defendant to retract its takedown requests from Amazon and from Godox's distributors.

53. This Court has personal jurisdiction over Defendant because it purposefully availed itself of the privileges of conducting commercial and legal activities in Washington through the APEX proceedings, Godox's claims arise out of these activities, and this Court's exercise of jurisdiction would be reasonable. As discussed above, Godox's claims arise out of Defendant's prosecution of APEX dispute resolutions by Amazon to have Godox's products at issue removed from the Amazon.com marketplace. As is widely known, Amazon's principal place of business is located in Seattle, Washington, and on information and belief, Amazon manages relations among sellers on its marketplace and administers the APEX program from its Seattle facilities. Indeed, the agreement governing the parties' APEX proceedings, which Defendant signed, states that "Participants agree to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington." (**Exhibits 3, 4**) Because Defendant voluntarily initiated APEX legal actions directly related to Godox's claims with Amazon in Seattle, Washington, and agreed to jurisdiction and venue in this forum, Defendant has purposefully availed itself of the privileges and benefits of conducting activities within Seattle, Washington and may reasonably expect to face litigation in this District.

54. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and were perpetrated by Defendant using a resident of and wrongfully prosecuting APEX legal proceedings in this district—namely, the APEX proceedings discussed above. In addition, as also discussed above, Defendant agreed with respect to the APEX proceeding "to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington." Further, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Defendant is a foreign company and is subject to personal jurisdiction in this District.

# COUNT I

## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 11,630,375

55. Godox repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

56. Profoto alleges that Godox's Products-at-Issue infringe one or more claims of the '375 Patent.

57. Godox has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '375 Patent, either literally or under the Doctrine of Equivalents. For example, and without limitation, the Products-at-Issue do not infringe, directly or indirectly, any asserted claim of the '375 Patent at least because they do not include "the flash housing fastening element arranged along a border of the lens element and extending from the plane of an external lens element surface of the lens element, for magnetic engagement with a corresponding fastening element at the flash light shaping tool, wherein the lens element has a substantially circular cross-section, wherein the flash housing fastening element is ring shaped and is made of ferromagnetic material, and wherein the flash housing fastening element has a fastening surface facing in the main direction of the flash light let out of the lens element" as required by the asserted claims of the '375 Patent.

58. More detailed bases for non-infringement are analyzed in the preceding sections, which are hereby incorporated by reference.

59. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

60. A judicial declaration is necessary and appropriate so that Godox may ascertain its rights regarding the '375 Patent.

61. Godox is entitled to a judicial declaration that it has not infringed and does not infringe the '375 Patent.

# COUNT II

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS EXPECTANCY

62. Godox repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

63. Defendant knowingly and intentionally interfered with Godox's valid business expectancy of sales of its Products-at-Issue via Amazon.com and its distributors by improper means, causing Amazon and Godox's distributors to terminate that expectancy by removing those products, resulting in damages from Godox's lost sales of such products.

64. Defendant had knowledge of Godox's sales of the Products-at-Issue via Amazon.com and its distributors, as shown by its APEX requests and cease-and-desist letters directed to those products.

65. By submitting the APEX requests, prosecuting the subsequent APEX proceeding, and sending cease-and-desist letters to Godox's distributors, Defendant intentionally interfered with and caused the termination of Godox's ability to sell the Products-at-Issue via Amazon.com and its distributors.

66. Defendant used improper means to interfere, as detailed above. Defendant lacked an objectively reasonable basis for accusing the Products-at-Issue of infringing the '375 Patent in its APEX requests and cease-and-desist letters, as demonstrated by Defendant's assertion of claims covering subject matters unequivocally disclaimed during prosecution.

67. As a result of this misconduct, Godox has suffered damages, including lost sales of the Products-at-Issue.

**JURY DEMAND**

68. Pursuant to Fed. R. Civ. P. Rule 38(b), Godox hereby demands a trial by jury on all issues and claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Godox requests that judgment be entered in its favor and prays that the Court grant the following relief:

    i. A judgment declaring that the manufacture, use, offer for sale, sale, and/or importation of Plaintiff's Products-at-Issue have not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '375 Patent;

    ii. An order enjoining Profoto and its officers, agents, servants, employees, attorneys, and those in active concert or participation with them from asserting infringement or instituting

            or continuing any action for infringement of the Patent-in-Suit against Godox or its subsidiaries, affiliates, customers (direct or indirect), distributors (direct or indirect), agents (direct or indirect), or contractors (direct or indirect);

    iii.    An award of monetary damages sufficient to compensate Plaintiff for Defendant's tortious conduct;

    iv.    An order declaring that this is an exceptional case, and awarding Godox its costs and reasonable attorney feeds under 35 U.S.C. ¶ 285; and

    v.    Such other and further relief as this Court may deem just and proper.

Dated: March 20, 2025                      Respectfully submitted,

                                                *s/ Ziyong (Sean) Li*
                                                ZIYONG (SEAN) LI (WA 44366)
                                                Benesch, Friedlander, Coplan & Aronoff LLP

                                                Attorney for Plaintiff
                                                Godox Photo Equipment Co., Ltd.